IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC LEWIS GRUBBS,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ANDREW SAUL,<br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　　　Defendant. | 2:18-cv-1617 |

## OPINION

**I.　Introduction**

Eric Lewis Grubbs ("plaintiff" or "Grubbs") brought this action for judicial review of the decision of the Commissioner of Social Security ("Commissioner"), which partially denied his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403. The parties filed cross-motions for summary judgment. (ECF Nos. 11, 17), which are fully briefed (ECF Nos. 12, 18, 21) and are ripe for disposition. For the following reasons, plaintiff's motion will be **GRANTED IN PART**, the Commissioner's motion will be **DENIED**, and the case will be remanded for further proceedings consistent with this opinion.

**II.　Background**

Grubbs was born on October 15, 1962.[1] (R. 46). He earned a GED degree and has a lengthy past relevant work record as a blaster in a coal mine, which is considered heavy

---

1.　As of the alleged onset date of disability, Grubbs was considered a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). Whenever a person is "closely approaching advanced age," the Commissioner "will consider that [his] age along with a severe

1

exertional level with a Specific Vocational Preparation ("SVP") rating of 7. Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability, October 1, 2015. On October 15, 2017, Plaintiff turned 55 years old. Because he was regarded as a "person of advanced age," 20 C.F.R. § 404.1563(e), the administrative law judge found him to be disabled as of that date. The issue in dispute is whether Grubbs is entitled to DIB for the period from October 2015 to October 2017.

### A. Procedural History

Plaintiff protectively filed an application for DIB on November 11, 2015, alleging disability as of May 14, 2015, later amended to October 1, 2015.[2] After plaintiff's claims were denied at the administrative level, he requested a hearing, which was held on October 17, 2017, in Morgantown, West Virginia, before an administrative law judge ("ALJ"). At the hearing, Grubbs was represented by counsel and testified, as did an impartial vocational expert ("VE") (R. 37-70).

After plaintiff's attorney cross-examined the VE, she stated that she had no further questions. (R. 69). The ALJ asked if she had anything else [to present] and she answered "No. Thank you, Judge." *Id*. The ALJ stated: "The hearing is now closed and we're off the record." (R. 70).

The next day, October 18, 2017, plaintiff's counsel submitted a letter to the ALJ asking, among other things, that he consider objections to the VE's testimony. Specifically, counsel contended that based upon the Department of Labor's Occupational Information Network ("O*Net"), the jobs identified by the VE (office helper, mail clerk, and storage facility rental

---

impairment(s) and limited work experience may seriously affect [his] ability to adjust to other work." *Id.*

[2] The onset date was amended to October 1, 2015, to avoid any issues with pancreatitis and alcohol abuse. (R. 44-45). Grubbs has not used alcohol since that time.

clerk) were not compatible with Grubbs' residual functional capacity ("RFC") as set forth in the hypothetical posed to the VE in the hearing. [3]

On January 10, 2018, the ALJ issued a decision partially favorable to Grubbs, finding that he was not disabled prior to October 15, 2017, but became disabled as of his 55th birthday. (R. 12-30). The ALJ's decision, which did not address the letter submitted by plaintiff's counsel after the hearing, became the final decision of the Commissioner on May 2, 2014, when the Appeals Council denied plaintiff's request to review the decision of the ALJ. (R. 1-6).

On December 17, 2018, Grubbs filed his complaint in this court, seeking judicial review of the Commissioner's final decision. The parties' cross-motions for summary judgment followed.

## III.    Legal Analysis

### A.    Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (the scope of review is "quite limited"). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

---

[3] The ALJ asked the vocational expert to assume a person of Grubbs' age, education and work experience who retains the capacity to perform light work with the following limitations: that allows alternate sitting or standing positions for up to two minutes at 30-minute intervals without going off task, no foot control operation bilaterally, occasional posturals except no climbing ladders, ropes or scaffolds, frequent manipulatives bilaterally, avoid concentrated exposure to extreme cold or heat, excessive vibration, irritants or chemicals, no exposure to unprotected heights, hazards, machinery or commercial driving, work limited to simple, routine and repetitive tasks requiring only simple decisions with no fast-paced production requirements and few workplace changes, and only occasional interaction with the public, co-workers and supervisors. (R. 64-65). Plaintiff does not directly challenge the RFC, although he criticizes the administrative law judge's failure to credit the opinion of Dr. Canada. It is unclear to the court whether the RFC reflects the effects of Grubbs' medications. *See* R. 50, 58-59 (Grubbs testifying about how his medications, which include opioids, make him tired and sleepy).

401 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Commr. of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

In *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), the United States Supreme Court recently summarized the standard of review:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id*. at 1154.

When resolving the issue whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other available work. *Newell v. Commr. of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003). The claimant has the burden of proof with respect to the first four steps and if step five is reached, the burden shifts to the Commissioner.

B. **Discussion**

In this appeal, Grubbs argues that the ALJ erred by failing to (1) rule expressly on his post-hearing objections to the VE's testimony; (2) respond to his requests for a consultative

4

examination and rejecting the opinions of Dr. Canada, his treating physician; and (3) expressly consider his exemplary work history in evaluating his credibility. Because the court will remand for further proceedings with respect to the second issue, it will be addressed first.

With respect to the second issue, Grubbs argues that the ALJ erred by: (a) rejecting the opinion of Gina Canada, D.O. ("Dr. Canada"), his treating physician, in favor of an outdated opinion of a non-examining state agency consultant[4]; and (b) refusing to order another medical examination to supplement the record.

Dr. Canada filled out a 1-page, check-the-box Medical Source Statement on October 3, 2017, which checked the most severe disability option for every question. (R. 696). The ALJ stated that he considered this Medical Source Statement, but concluded that it was at odds with the medical records in the case. (R. 27). The ALJ pointed to the medical records showing only mild abnormalities in diagnostic imagery, and normal strength and gait.[5] The ALJ observed that Dr. Canada did not provide any textual support or explanation for her responses and left the categories "diagnosis" and "primary symptoms" blank.

The ALJ was not required to accept Dr. Canada's opinion. A treating physician's opinion is accorded controlling weight only if the administrative law judge finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the] case record." *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Forms which require the completing physician only to "check a box or fill in a blank," rather than provide a substantive

---

[4] The parties agree that the revisions to the regulations governing evaluation of medical evidence do not apply because this claim was filed prior to March 27, 2017. 82 Fed. Reg. 5844 (Jan. 18, 2017).
[5] The ALJ cited generally to Exhibits 1F-12F and 14-F. (R. 27). Because most of these exhibits contain multiple pages, pinpoint citations to the actual pages relied upon would be a better practice.

basis for the conclusions stated, are considered "weak evidence at best" in the context of a disability analysis. *Id*. (citing *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir.1993)).

Grubbs argues that Dr. Canada's opinion is consistent with the medical record.[6] He points to: (1) an MRI on August 19, 2016, showing an synovial cyst and mild degenerative changes to both hip joints (R. 679); (2) an August 19, 2016 MRI showing moderate diffuse disc bulging with superimposed left paracentral disc protrusions at L1-L2 in contact and compressing the thecal sac from the anterolateral left aspect, mild diffuse bulging at L5-S1 and degenerative disc disease (R. 683); (3) an MRI on November 23, 2016, showing moderate to large uncovertebral osteophyte at C4-C5 producing moderate right-sided foraminal narrowing, mild diffuse disc bulging at C3-C4 and C6-C7 and minimal degenerative disc disease through the cervical spine (R. 685); (4) an MRI of his left shoulder on November 23, 2016, which showed a partial thickness tear of the supraspinatus muscle tendon, downward sloping acromium process that appeared to be producing impingement, small tear of the anterior glenoid labrum, slight irregular signal characteristics of the subscapularis muscle tendon and mild subcoracoid bursitis (R. 687); (5) an MRI of his right shoulder on November 23, 2016, which showed mild tendinosis involving a large portion of the supraspinatus muscle tendon with a partial thickness (bursal surface) tear, subcoracoid bursitis, downward sloping acromium process producing impingement, joint effusion with fluid within the subacromial/subdeltoid bursa, and a small tear of the superior glenoid labrum (R. 688-89); (6) an MRI on August 10, 2017, which showed moderate diffuse disc protrusion at L1-L2, L3-L4 mild diffuse disc bulging without foraminal manner or central canal stenosis, L4-L5 diffuse disc bulging with mild bilateral foraminal narrowing (R. 691); (7) an MRI on August 10, 2017, showing a large synovial cyst on the right

---

[6] The court's standard of review, however, is whether substantial evidence supports the ALJ's discounting of Dr. Canada's opinion.

hip joint, a small tear of the superior labrum and mild bilateral trochanteric bursitis more pronounced on the left (R. 693); (8) a NCV/EMG report on October 2, 2017, of his left lower extremity that was consistent with moderately severe neurogenic changes with a distal gradient (R. 700); and (9) a NCV/EMG report of his upper extremities on September 29, 2017, which was consistent with mild to moderate chronic neuropathy and cervical radiculopathy (R. 701).

Grubbs argues that the ALJ's characterization of these reports as showing only mild impairment as "facially absurd," (ECF No. 12 at 19),[7] and challenges the ALJ's refusal to seek an additional medical consultation. As explained in *Hardee v. Commissioner of Social Security*, 188 F. App'x 127, 129 (3d Cir. 2006), an administrative law judge has broad discretion in determining whether to consult with a medical expert, and does not err by deciding that a consultation was unnecessary if he bases his findings on a thorough analysis of the medical evidence in the case. *See Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("the ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision.").

In this case, the ALJ was aware that the state agency reviewer, Paul Reardon, M.D., only considered Grubbs' medical records for periods prior to January 2016, when he performed his review. The ALJ explained that this did not diminish the weight he afforded to Dr. Reardon's opinion because Grubbs' medical condition did not deteriorate after that date. (*See* R. 27: "Although Dr. Reardon has not had access to the medical records after that date, there is no evidence of a worsening of claimant's physical condition."). The ALJ explained that Dr.

---

[7] The ALJ recognized that Grubbs has numerous severe impairments that limited his ability to work, i.e., a history of alcohol abuse with chronic pancreatitis, chronic objective pulmonary disease, lumbar disc herniation, cervical spondylosis, history of a tear in right hip joint, bilateral trochanteric bursitis, hypertension, Parkinson's disease, peripheral neuropathy, history of epilepsy, chronic headaches, affective disorder, and anxiety disorder. (R. 18). Grubbs did not challenge this aspect of the ALJ's analysis.

Reardon's opinion was consistent with the mild abnormalities shown by the objective medical studies during the 2015-2017 timeframe. *Id.*

Upon review, the ALJ's reliance on Dr. Reardon's opinion is inconsistent with the post-2016 medical record. Dr. Reardon discounted the credibility of Grubbs' subjective complaints of pain by observing, among other things: "He is not prescribed narcotic medication for pain." R. 78. Subsequent to Dr. Reardon's review, multiple medical professionals prescribed various narcotic pain medications for Grubbs in an ongoing effort to control his pain. *See, e.g.,* R.517 (Dr. Brizuela noting on 3/26/2016 that Ultram is not helping); R. 526 (Timczyk, DNP, noting Grubbs' pain "has progressively worsened" and prescribing percoset on 8/11/2016); R. 531 (noting that prior pain medications included hydrocodone, codeine, fentanyl and tramadol); R. 532 (Timczyk, discontinuing percoset and prescribing Dilaudid on 8/26/2016); R. 534 (oxycodone prescription filled 8/11/2016); R. 536 (hydromorphone prescription filled 8/26/2016); R. 544 (Timczyk, discontinuing Dilaudid and prescribing Opana on 9/23/2016); R. 552 (oxymorphone prescription filled 9/24/2016); R. 554 (Timczyk, discontinuing Opana and prescribing MSContin on 10/13/2016 due to inadequate relief); R.572 (prescription for morphine ER filled on 12/26/2016); R. 580 (MS Contin prescribed on 2/23/2017); R. 587 (Hites, DNP, adding Percoset to MS Contin and Lyrica prescriptions on 3/23/17); R. 591-592 (Badarinath, M.D., performing selective transforaminal lumbar epidural nerve root injection on 4/20/2017 and noting prior medications including hydrocodone, codeine, fentanyl, tramadol and all conservative care has given minimal to no relief); R. 674 (Flannagan, M.D., noting on 8/4/2017 that Grubbs was treated in the pain clinic with narcotic pain medications and injections without relief).[8] On October 2, 2017, Dr. Asthana opined that a NCV/EMG of Grubbs' lower left

---

[8] Most of these medications are opioids and most of them cause somnolence. *See* Physician's Desk Reference (71st ed. 2017) at S-920, S-684, S-424, S-286,S-265, S-666. S-338, S-645, S-578, S-575, S-528.

extremity was consistent with moderately severe sensori-motor peripheral neuropathy, mixed. R. 700. (*See* Plaintiff's Brief, ECF No. 12 at 19-24 & n. 13).

The ALJ did not address these medical records when refusing Grubbs' request for an updated medical review because the ALJ determined that Grubbs' condition did not deteriorate. An administrative law judge cannot rely on his own expertise rather than that of a physician who presents competent medical evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). For the period after January 2016, the ALJ found that Grubbs' condition did not deteriorate based on his own opinion, rather than any competent medical evidence. That decision was improper and requires remand.

Because Grubbs was found disabled as of October 2017, a remand for the ALJ to obtain an additional medical examination at this time would be unwarranted -- his condition in 2019 would shed little light on his condition from 2015-2017. On the other hand, it is necessary for a qualified medical professional to perform a medical records review for the period from January 2016 through October 2017 to obtain a qualified medical opinion about whether Grubbs' RFC deteriorated during that timeframe. *See* 20 C.F.R. § 404.1527(c)(3) (an administrative law judge will evaluate the degree to which medical opinions consider all the pertinent evidence, including medical opinions of treating and other examining sources). In sum, it was error for the ALJ to decline plaintiff's request to order another medical evaluation for the 2016-2017 timeframe.

Because a remand is necessary for further proceedings, the court need not resolve the other issues in this appeal. On remand, plaintiff's counsel will have the opportunity to raise the job description issues set forth in her post-hearing supplemental letter. If raised, the ALJ should expressly explain why the additional information based on the O*NET does or does not undercut

his reliance on the VE's opinion about the jobs Grubbs was able to perform. The ALJ's failure to do so impairs this court's ability to perform a meaningful judicial review of his decision.

With respect to plaintiff's exemplary work history, the ALJ explained the reasons for his conclusion that he could not fully credit Grobbs' testimony. (R. 24-28). Of course, as explained above, the ALJ placed undue reliance on the January 2016 medical review performed by Dr. Reardon, who did not consider the medical records obtained after that review, and the ALJ improperly relied on his own lay opinion that Grubbs' condition did not deteriorate after January 2016. On remand, the ALJ must reevaluate whether Grubbs' testimony is consistent with his limitations in light of a more fully-developed medical record.

### IV.     Conclusion

The case will be remanded to the Commissioner to obtain a qualified medical opinion about whether Grubbs' RFC deteriorated during the January 2016 through October 2017 timeframe. On remand, plaintiff's counsel may raise the issues set forth in the October 18, 2017 supplemental letter and the ALJ should reevaluate whether Grubbs' testimony is consistent with his limitations in light of a more fully-developed medical record.

For these reasons, the Court will **DENY** the Motion for Summary Judgment filed by the Commissioner; **GRANT IN PART AND DENY IN PART** the Motion for Summary Judgment filed by plaintiff; and remand this case for further proceedings consistent with this opinion.

An appropriate order follows.

BY THE COURT:

s/ Joy Flowers Conti
Senior United States District Judge